IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| BRIAN K. POWELL and KARA M. POWELL, | ) | C/A No. 3:16-cv-105-JFA |
| Plaintiffs, | ) | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERT V. SHAW EVANS, MD** |
| v. | ) | |
| BAREFOOT CARRIERS, INC., | ) | |
| Defendant. | ) | |

Plaintiffs Brian Powell and Kara Powell, by and through their undersigned counsel, hereby submit this Memorandum in Support of their Motion to Exclude the Opinions and Testimony of Defendant's Expert V. Shaw Evans, MD. For the reasons set forth herein, Dr. Evans' opinions fail to meet the *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) standard for reliability, and therefore, the Plaintiffs respectfully request that this Court preclude Dr. Evans from testifying at the upcoming trial of this case.

## BACKGROUND

This case arises out of a June 8, 2014 motor vehicle collision involving the Plaintiffs and a 2014 Freightliner truck operated by an employee of Defendant Barefoot Carriers. As a direct and proximate result of that collision, Plaintiff Brian Powell sustained severe and permanent injuries.

On March 30, 2017, Defendant Barefoot Carriers identified V. Shaw Evans, MD ("Dr. Evans") as an expert witness in the area of psychiatry. According to his report, Dr. Evans was asked to perform an "Independent Medical Evaluation" the purpose of which was "to determine the impact of Somatic Symptom Disorder, as well as any other psychological or psychiatric

disorders, on the medical complaints identified by Mr. Brian Powell, both before and after the accident on June 8, 2014." (*See* **Exhibit A,** Evans Report, p. 1).

As part of his "Independent Medical Evaluation", Dr. Evans did not request a mental health examination under Rule 35 of the Federal Rules of Civil Procedure, nor did he ever interview, meet or interact with Plaintiff Brian Powell. Furthermore, it does not appear that Dr. Evans even reviewed the transcripts from either of the depositions given by Plaintiff Brian Powell in this case. Despite all that, Dr. Evans purports to diagnose the Plaintiff with various psychological and/or psychiatric disorders and opine that the collision at issue in this case "is not the causative factor in the psychological, psychiatric, and medical issues [Plaintiff] has been reporting" based solely on his review of the Plaintiff's medical records. (**Exhibit A**, p. 2).

As shown below, the Court should preclude Dr. Evans from testifying at trial because his methodology is unreliable and not consistent with acceptable standards of psychiatric practice.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony and provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this Rule, the district court judge acts as a gatekeeper to "ensure that any and all [expert] testimony...is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The proponent of the expert testimony bears the burden of demonstrating "its admissibility by a preponderance of proof." *Cooper v. Smith &*

*Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir.2001). "Thus, the proponent of an expert witness's testimony bears the burden of proving that the witness has the necessary qualifications and that the expert's testimony is reliable." *Nucor Corp. v. Bell*, 2008 WL 4442571, *3 (D.S.C. Jan. 11, 2008)[1].

"A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp*., 190 F.3d 244, 250 (4th Cir.1999); *see also General Electric v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). Plainly stated, the "trial court's gatekeeping function requires more than simply taking the expert's word for it. The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." Fed R. Evid. 702 Advisory Committee Note (2000) (citations and quotations omitted).

In assessing whether the expert testimony is relevant and reliable, the Court should consider "(1) whether the particular scientific theory 'can be (and has been) tested'; (2) whether the theory 'has been subjected to peer review and publication'; (3) the 'known or potential rate of error'; (4) the 'existence and maintenance of standards controlling the technique's operation'; and (5) whether the technique has achieved 'general acceptance' in the relevant scientific or expert community." *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94). The focus of the Rule 702 analysis is on the "principles and methodology" applied by the expert, not on the conclusions reached. *Daubert*, 509 at 595. "[T]he objective

[1] Pursuant to Local Civil Rule 7.05(C)(2), copies of unpublished decisions are attached hereto as **Exhibit B.**

of *Daubert's* gatekeeping requirement is to make certain that an expert…employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Cooper*, 259 F.3d at 200.

**ARGUMENT**

It is undisputed that Dr. Evans did not conduct a clinical examination or interview with Plaintiff Brian K. Powell prior to his March 28, 2017 report. Despite this, Dr. Evans purports to be able to diagnose the Plaintiff with various psychological and/or psychiatric disorders based solely on his review of the Plaintiff's medical records. Other than recitations to information contained in various medical records, Dr. Evans' report does not outline a specific scientific methodology which was standard in the practice of psychiatry that was used to reach his conclusions regarding the Plaintiff.

It is generally accepted practice in the field of psychiatry for a diagnosis to be made based on an examination of the individual being assessed. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-5),* p. 21 (2013) ("On the basis of the ***clinical interview***, text descriptions, criteria, and clinician judgment, a final diagnosis is made.")(emphasis added)[2]; *see also* American Psychiatric Association, *Opinions of the Ethics Committee on the Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry*, p. 75 (2017)[3]:

> Psychiatric diagnosis occurs in the context of an evaluation, based on thorough history taking, ***examination***, and, where applicable, collateral information. ***It is a departure from the methods of the profession to render an opinion without an examination*** and without conducting an evaluation in accordance with the standards of psychiatric practice. Such behavior compromises both the integrity of the psychiatrist and of the profession itself.

[2] Relevant excerpts are attached hereto as **Exhibit C**.
[3] Relevant excerpts are attached hereto as **Exhibit D**.

(emphasis added); *Tchatat v. City of New York,* 315 F.R.D. 441 (S.D.N.Y. 2016) (finding the methodology utilized by the defense's expert psychiatrist to be scientifically unreliable where the psychiatrist never examined or interviewed the plaintiff, but instead based his report on his review of medical records, deposition testimony and other records); *Westphal v. Eastman Kodak Co.*, 2006 WL 1720380, *5 (W.D.N.Y. June 21, 2006) ("The psychiatric treating model requires that a doctor treating a psychiatric patient conduct an interview, and medical examination of the patient. Because of the inherent subjectivity of a psychiatric diagnosis, and because a proper diagnosis requires a personal evaluation of the patient's credibility and affect, it is the preferred practice that a psychiatric diagnosis be made based upon a personal interview with the patient.").

Moreover, "it is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement." American Psychiatric Association, *Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry*, Section 7.3 (2013)[4]; *see also* American Academy of Psychiatry and the Law, *Ethical Guidelines for the Practice of Forensic Psychiatry,* Section IV. Honesty and Striving for Objectivity (2005)[5]:

> Psychiatrists should not distort their opinion in the service of the retaining party. ***Honesty, objectivity and the adequacy of the clinical evaluation may be called into question when an expert opinion is offered without a personal examination.*** For certain evaluations (such as record reviews for malpractice cases), a personal examination is not required. In all other forensic evaluations, if, after appropriate effort, it is not feasible to conduct a personal examination, an opinion may nonetheless be rendered on the basis of other information. Under these circumstances, it is the responsibility of psychiatrists to make earnest efforts to ensure that their statements, opinions and any reports or testimony based on those opinions, clearly state that there was no personal examination and note any resulting limitations to their opinions.

[4] Relevant excerpts are attached hereto as **Exhibit E**.
[5] Attached hereto as **Exhibit F.**

(emphasis added).[6]

It is clear from all of these sources that the methodology utilized by Dr. Evans in reaching his opinions in this case is not a generally accepted methodology in the community of psychiatrists for making a medical diagnosis. Therefore, Dr. Evans' opinions are unreliable and should be excluded under Rule 702 and *Daubert*.

## CONCLUSION

Based on the foregoing, Plaintiffs Brian K. Powell and Kara M. Powell respectfully request that the Court grant their Motion to Exclude the Opinions and Testimony of Defendant's Expert V. Shaw Evans, MD.

Respectfully submitted this 8th day of February, 2018.

WALKER MORGAN, LLC

s/S. Kirkpatrick Morgan, Jr.
S. Kirkpatrick Morgan, Jr., Fed. ID #5035
Charles T. Slaughter, Fed ID #10690
135 East Main Street
Post Office Box 949 (29071)
Lexington, South Carolina 29072
Telephone: (803) 359-6194
Facsimile: (803) 957-4584
km@walkermorgan.com
chuck@walkermorgan.com
*Attorneys for the Plaintiffs*

[6] Here, there is no showing that an examination of the Plaintiff was not feasible. Also, contrary to the ethical guidelines, Dr. Evans does not reveal in his report that he did not conduct an examination of the Plaintiff, nor does he state in his report that his opinions are limited in any way by his failure to conduct an examination of the Plaintiff.